# IN THE COURT OF APPEALS OF IOWA

_____

No. 25-0335
Filed July 22, 2026

_____

**Dennis Lee Lawson,**
Applicant–Appellant,

v.

**State of Iowa,**
Respondent–Appellee.

_____

Appeal from the Iowa District Court for Monona County,
The Honorable Tod Deck, Judge.

_____

**AFFIRMED**

_____

Steven J. Drahozal, Assistant Public Defender, State Public Defender's
Office–Wrongful Convictions Unit, attorney for appellant.

Brenna Bird, Attorney General, and Benjamin Parrott, Assistant Attorney
General, attorneys for appellee.

_____

Considered without oral argument
by Badding, P.J., Langholz, J., and Mullins, S.J.
Opinion by Badding, P.J.

**BADDING, Presiding Judge.**

Dennis Lawson was convicted of robbing a Pizza Hut where his fiancée, Mary Johnson, worked. Video of the robbery showed a man with a scarf covering his face walk up to the counter of the restaurant. Johnson greeted him with a smile and an embrace. But at Lawson's trial for second-degree robbery, the jury learned that Johnson gave sworn testimony that she did not know who robbed the Pizza Hut.[1] In his rebuttal argument at the close of trial, the prosecutor described that as "the biggest whopper you're going to hear all year."

Lawson objected to that statement, among others, and moved for a mistrial after the jury was released to deliberate. The trial court sustained the objection and took the mistrial motion under advisement, denying it after the jury returned a guilty verdict. The court also denied Lawson's motion for a new trial alleging prosecutorial misconduct throughout the trial. Lawson challenged the court's rulings on direct appeal, but we found his claims were waived because the motions were untimely. *See State v. Lawson*, No. 21-1613, 2022 WL 4362200, at *1 (Iowa Ct. App. Sep. 21, 2022).

On postconviction relief, Lawson claimed defense counsel was ineffective for failing to timely challenge the prosecutorial misconduct. He

---

[1] Johnson gave that testimony at a federal grand jury proceeding to indict Lawson for the robbery. After that proceeding failed to return an indictment, the State charged Johnson with accessory after the fact. Because those charges were pending when Lawson was tried in state court for the robbery, Johnson exercised her Fifth Amendment privilege against self-incrimination. So the parties agreed to read a stipulation to the jury that said, "Mary Johnson testified under oath that she does not know who robbed the Onawa Pizza Hut on February 7, 2018."

also raised an actual innocence claim. The postconviction-relief court denied both claims, and Lawson now appeals.

***

We review postconviction-relief proceedings raising constitutional claims, such as ineffective assistance of counsel, de novo. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). To prevail on an ineffective-assistance claim, an applicant must establish that (1) counsel failed to perform an essential duty and (2) prejudice resulted. *See State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (citation omitted).

Lawson argues that although defense counsel objected to prosecutorial misconduct throughout the trial, "counsel needed to follow objections with timely motions for mistrials." Because counsel failed to do so, Lawson contends that counsel breached an essential duty, which prejudiced him by preventing appellate review of the trial court's rulings on the untimely motions. Lawson's arguments under both *Strickland* prongs hinge on the merits of his prosecutorial-misconduct claim, which the postconviction-relief court found lacking. *See In re Det. of Blaise*, 830 N.W.2d 310, 318–19 (Iowa 2013) (explaining that when a defendant challenges counsel's failure to assert an issue, the questions of breach and prejudice may both depend on the merits of the claim). We agree.

"In determining whether misconduct is so prejudicial as to warrant a new trial," we assess five factors: "(1) the severity and pervasiveness of misconduct; (2) the significance of the misconduct to the central issues in

the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; [and] (5) the extent to which the defense invited the misconduct." *State v. Coleman*, 907 N.W.2d 124, 140 (Iowa 2018) (citation omitted).

Lawson concentrates on the first factor, contending that the prosecutor's misconduct was severe and "infected all sta[g]es of the trial." Starting with jury selection, he asserts the prosecutor tried to argue his case by questioning potential jurors "about the presiding judge and how to decide if he actually is a judge." Defense counsel objected to the questions as argumentative, and the trial court directed the prosecutor to move on. Lawson contends the misconduct continued during the State's case in chief when the prosecutor repeatedly tried to admit exhibits over defense counsel's foundation objections, which the court sustained. Finally, Lawson points to the prosecutor's "biggest whopper" statement during the rebuttal closing argument, contending that was the same as asserting, "Johnson is a liar." He also objected to other statements made by the prosecutor in rebuttal, including that Johnson "was willing to whisper to the robber . . . to get out of there," even though there was no audio on the video that was admitted into evidence. Those objections were also sustained.

In denying Lawson's motions for a mistrial or new trial, the trial court found the prosecutor's "comments were not mere inferences from the evidence but amounted to the creation of evidence that did not exist" and thus "were clearly improper and constituted prosecutorial misconduct." Despite that finding, the court concluded that Lawson was not denied a fair trial because it had

> instruct[ed] the jury prior to closing statements that the statements of counsel are not evidence and should not be construed as evidence. In addition, as the County Attorney made the foregoing statements, counsel

4

> for the Defendant did object and the Court sustained those objections and instructed the County Attorney at one point to "limit your comments to what is observable on the video."

The court also found that "there was substantial evidence from which the jury could have reached the verdict it rendered ignoring the improper comments" by the prosecutor.

We agree with the trial court that the claimed misconduct did not deprive Lawson of a fair trial. *See State v. Plain*, 898 N.W.2d 801, 818 (Iowa 2017) ("In order to establish a violation of the right to a fair trial, a defendant must show both (1) error or misconduct *and* (2) prejudice." (emphasis added)). Contrary to Lawson's arguments otherwise, the State's case against him was strong. *See State v. Carey*, 709 N.W.2d 547, 559 (Iowa 2006) (stating that the "most important factor under the test for prejudice is the strength of the State's case"). "Clearly, the stronger the case against the defendant, the less likely the jury is to look beyond the record." *Id.*

Here, the record established that Lawson spent the evening of the robbery gambling at a casino located about twelve minutes away from the Pizza Hut where Johnson worked. Security cameras from the casino showed that he was wearing a dark green coat with a hood, light blue jeans, and a dark stocking cap. Lawson left the casino at 8:42 p.m. Around 9:00 p.m., a man wearing a similar dark green coat and light blue jeans walked into the Pizza Hut. The man had the coat's hood pulled up over a stocking cap, with a scarf covering his face. He was also wearing black gloves with orange webbing.

A security camera inside the restaurant captured the man walking up to the counter, where he was greeted by Johnson. She smiled at the man and embraced his arms. The two leaned over the counter and spoke for several

minutes while Johnson rubbed and patted the robber's arms. A server noticed the exchange when it became argumentative. Concerned, the server asked Johnson if everything was okay. Johnson replied under her breath that the man was trying to rob them. The server triggered the silent alarm and walked away to warn her customers. Once she was gone, Johnson leaned across the counter and said something to the robber. He quickly left.

A deputy responding to the robbery was told that "the male had just r[u]n north." While driving in that direction, the deputy encountered a speeding vehicle being driven by Lawson. The deputy recognized Lawson and stopped him in the driveway of the home where he lived with Johnson. He was wearing "green-ish coat, like a Carhartt farm coat . . . and light blue jeans," as well as a dark stocking cap. The deputy told Lawson to slow down and returned to the search for the robbery suspect. But after the deputy reviewed the Pizza Hut's security videos, he saw that the robber was wearing the same clothing that Lawson had on when he stopped him.

Law enforcement went back to Lawson's home and confronted him about the robbery. The deputy asked to see the coat Lawson had been wearing when he was stopped in the driveway, but Lawson refused to produce it. After applying for a search warrant, police found black gloves like the ones the robber had been wearing between the mattress and box spring of Lawson's bed. But they did not find Lawson's coat, and he had no explanation for where it was.

Based on this evidence, the trial court concluded

> there was substantial other evidence from which the jury could conclude that the Defendant was in fact the perpetrator of the crime, namely the videos from the casino and the Pizza Hut which showed the perpetrator

wearing exactly the same [clothes] as those worn by the Defendant at the casino and the timelines from the videos lining up.

The strength of that evidence, combined with the trial court sustaining most of defense counsel's objections and the instructions given to the jury, establish that any alleged misconduct was not enough to require a new trial. *See id.* at 560; *see also State v. Graves*, 668 N.W.2d 860, 883 (Iowa 2003) (noting a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support). Thus, it is not reasonably probable that, but for defense counsel's failure to timely move for a mistrial due to the claimed misconduct, the result of the proceeding would have been different. *See Ledezma v. State*, 626 N.W.2d 134, 144 (Iowa 2001). We affirm the postconviction-relief court's denial of this claim.

***

This leaves Lawson with his claim of actual innocence, which we review de novo. *Wyldes v. State*, 36 N.W.3d 72, 89 (Iowa 2026). To prove that claim, Lawson was required to "show by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty in light of all the evidence, including the newly discovered evidence." *Schmidt v. State*, 909 N.W.2d 778, 797 (Iowa 2018). The postconviction-relief court concluded that Lawson failed to meet this "demanding" standard. *Dewberry v. State*, 941 N.W.2d 1, 5 (Iowa 2019). We agree.

The core of Lawson's actual-innocence claim is Johnson's testimony at the postconviction-relief hearing that Lawson was not involved in the robbery. But that was not new evidence. The parties stipulated at Lawson's

criminal trial that Johnson gave sworn testimony that she did not know who robbed the Pizza Hut. Given the strong evidence detailed above, we cannot find that no reasonable fact finder could have convicted Lawson. *See Schmidt*, 909 N.W.2d at 797. It took the jury less than two hours to find Lawson guilty, and testimony from a witness implicated in the crime does not shake our confidence in that verdict.

**AFFIRMED.**